that the learned justice decides the case to come within the rule of Walden v. Craig, 7 Pet. (32 U. S.) 144.]

LEDLEY (PHILIPS v.). See Case No. 11,-096.

## Case No. 8,176.

### Ex parte LEE.

[1 Cranch, C. C. 394.] [1]

Circuit Court, District of Columbia. July Term, 1806.

EXECUTORS — WILL REQUESTING NO SECURITY — WHEN ALLOWED IN VIRGINIA.

The orphans' court of Alexandria county cannot, in any case, grant letters testamentary without security. unless the testator's visible personal estate is sufficient to pay all the debts.

PER CURIAM. Mr. [E. J.] Lee was appointed one of the executors of W. Craik, deceased, who by his will declares, that "it is his wish and desire that his executors, or either of them, should not be required to give security as executors of his will." Mr. Lee applied to the orphans' court of Alexandria county for letters testamentary, which were refused, because it did not appear, to the satisfaction of that court, that there was visible estate enough to pay the testator's debts, and the court having reason to doubt, from its own knowledge, whether the testator's personal estate was sufficient for that purpose. From the judgment of that court Mr. Lee has appealed to this. The right to letters testamentary without giving security is claimed under the will and the act of assembly (page 163) which allows it only in cases where the testator shall have visible estate more than sufficient to pay all his debts, nor even in that case if the court shall see cause, from its own knowledge, to suspect that the testator's personal estate will not be sufficient to discharge all the debts. A second application was made to the court grounded on a statement of debts due from the testator in the county of Alexandria, and a schedule of personal estate in that county, without any estimate of the value thereof. But the court again refused, and from that judgment there is also an appeal to this court.

This court can see no error in either of those decisions, and is of opinion, that that court was bound by law to decide as it has decided. The appeal must therefore be dismissed.

## Case No. 8,177.

### Ex parte LEE.

[4 Cranch, C. C. 197.] [1]

Circuit Court, District of Columbia. April Term, 1832.

CLERK OF COURT—FEES—FOR CONTINUANCE.

If a case in equity be set for hearing as to some of the defendants, and, as to them, brought upon

[1] [Reported by Hon. William Cranch, Chief Judge.]

the docket of the court, and continued at the rules as to other defendants who are absent and who have not answered, the clerk has a right to charge his fees for the continuances at the rules.

Mr. Hewitt objected to the clerk's bill of fees in a chancery attachment, in which he charged continuances at the rules, after the cause was set for hearing as to the resident defendants, and common order of publication as to the absent defendants, and before the order of publication was executed. The cause as to the resident defendants was transferred to the court docket, but as to the absent defendants it remained at the rules.

THE COURT said it was a question of practice, and requested information as to the practice in the courts of Virginia. Mr. R. J. Taylor said the practice was as stated by Mr. [E. J.] Lee. Precedents were also produced in the time of Colonel Deneale; and on this day (3d May, 1832) a letter from Mr. Phillips, the clerk of the court at Fauquier, Virginia, was produced, confirming Mr. Lee's statement of the practice.

THE COURT (THRUSTON, Circuit Judge, absent) decided the point in favor of the clerk.

## Case No. 8,178.

### Ex parte LEE.

[1 N. Y. Leg. Obs. 83; 4 Law Rep. 486.]

District Court, S. D. New York. 1842.

BANKRUPTCY—WHEN DECLARED BANKRUPT—WHEN DEEMED BANKRUPT.

An applicant for a decree in bankruptcy may be examined before a commissioner prior to his being declared a bankrupt; a petitioner is deemed a bankrupt from the time he applies to the court for a decree.

This was a motion to have the petitioner examined before a commissioner, prior to a decree being passed. It was urged on behalf of the petitioner that until he was declared a bankrupt, he was not subject to examination. Cur ad vult.

BETTS, District Judge. This is an important point, but I think that the counsel for the petitioner is mistaken in his reading of the law [of 1841 (5 Stat. 443)]. He will find by the fourth section, that the bankrupt shall be always subject to examination orally or by interrogatories before the court or commissioners touching all matters relating to the bankrupt, and his acts and doings as the court may think proper. It is said, that congress intended only that he should be subject to an examination after being declared a bankrupt. But in referring to another section of the act, it will be found, that he takes the name of bankrupt before he is pronounced so by the court. On filing their petitions they are deemed bankrupts, and that is the descriptio personae. And though he has still to be declared so by the court, yet on showing cause and giving

notice, he is nominally, and for the purpose of enforcing this act deemed a bankrupt from the time he applies to the court. And I have no doubt that congress intended to subject him to examination from the time he applied to be made a bankrupt. But it also appears by another section, that it was intended to subject him to the orders of the court; and that he cannot get his discharge until he complies with all the orders of the court; and one of the orders of the court is, that certain matters shall be sent to the commissioners; and if the court order the bankrupt to go to the commissioners for examination, it is as much an order as it would be to desire him to show his books; and it is an order in strict conformity with the act. But the court is also authorized to proceed summarily as in chancery. And in summary proceedings in equity, it is the ordinary practice to send matters before a master in chancery for examination. In either point of view, he is therefore bound to go before the commissioners for examination, before he is declared a bankrupt. He is bound to go there, because it is one of the orders of the court, which he is bound to comply with, or because it is a proceeding in the nature of equity, and in either of these points of view he is bound to go there, and the court has power to make him do it. The act manifestly intended that the creditor should have the right to go into the whole matter, in order to show, if he can, that the petitioner has not complied with the law, and thus cut him off from a decree.

There can be no doubt, that when the framers of this act first prepared it, they contemplated only the voluntary bankruptcy, but it was afterwards thought better to couple with it the involuntary, and in order to do so this mode of proceeding was provided. It would of course be unjust to let a creditor proceed against a bankrupt, without giving him any remedy, and it is manifest that congress intended to let the debtor come in and show that the creditor had no right to stop his business and take away his property, and it therefore gave him this proceeding to counteract it. But in doing so they have attached to the voluntary proceeding the same privilege as to the involuntary proceeding, and have given to the creditor the same power as to the debtor, and in both cases it is competent for the parties to show, by matter of fact or law, why the proceeding should not go on. It is sometimes the interest of the creditor to prevent the bankrupt getting a decree, as his not doing so might better insure individual debt, and therefore it was his interest to prevent him. Ordinarily it is for the interest of all parties that the proceeding should go on and the property go to the assignee. But the creditors have liberty in this incipient stage of the proceeding to show that the bankrupt is not entitled to a decree.

## Case No. 8,179.

### In re LEE.

[14 N. B. R. 89; 23 Pittsb. Leg. J. 196.] [1]

District Court, N. D. New York. March, 1876.

BANKRUPTCY—ILLEGALLY PREFERRED CREDITORS—RIGHT TO PROVE DEBT—TWO CLAIMS, ONLY ONE PREFERRED.

1. The amendments of 1874 [18 Stat. 178], so far as they change the existing law in reference to the rights of assignees to recover property transferred in contravention of the bankrupt act [of 1867 (14 Stat. 517)]: and in reference to the proof of debts by creditors who have taken a preference, are not retroactive and do not apply where the proceedings in bankruptcy had been previously commenced.

[Cited in Warren v. Garber, Case No. 17,196.]

2. Under the prior law a preferred creditor who did not surrender his preference until he was compelled to do so by the judgment of a court, could not prove his debt.

3. If a preferred creditor has two separate claims and receives a preference on one of them alone, he may prove the other.

[Cited in Re Aspinwall, 11 Fed. 138.]

[In the matter of John F. Lee, a bankrupt.]

WALLACE, District Judge. I am of opinion that the Security Bank is not entitled to prove the claim upon which it received an illegal preference in 1872. This conclusion necessarily involves the decision of two questions against the bank, upon both of which my views conflict with authorities entitled to great respect.

First. The amendments of 1874, so far as they change the existing law in reference to the rights of assignees to recover property transferred in contravention of the bankrupt act, and in reference to the proof of debts by creditors who have taken a preference, are not retroactive, and do not apply where the proceedings in bankruptcy had been previously commenced. If the amendments had merely removed a prohibition in the nature of a penalty upon creditors who had taken a preference, without affecting the substantial rights of others, there would be no difficulty in giving it retrospective effect. But it is to be observed that by the same amendment and in the same sentence two vigorous innovations upon the existing law are introduced, one of which defeats a recovery by an assignee where his right was clear, and the other diminishes a fund for the resort of innocent creditors, by authorizing another class of creditors to share in its distribution, who were theretofore precluded from doing so because of their wrongful acts. The former, in effect, alters a rule of property affecting the validity of all titles derived from bankrupts since the act went into operation; the latter defeats one of the most valuable advantages conferred upon innocent creditors. If one is retrospective, both are; for there is no language in the

[1] [Reprinted from 14 N. B. R. 89, by permission. 23 Pittsb. Leg. J. 196, contains only a partial report.]